Green Mountain Bureau, LLC v. Bisignano, No. 204-4-09 Wmcv (Wesley, J., Apr. 15, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                       WINDHAM SUPERIOR COURT
WINDHAM COUNTY                      DOCKET NO. 204-4-09 Wmcv

**GREEN MOUNTAIN BUREAU, LLC,**
       **Plaintiff,**

       **v.**

**ELIZABETH BISIGNANO,**
       **Defendant.**

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**Introduction**

Plaintiff Green Mountain Bureau, LLC has sued Defendant Elizabeth Bisignano, seeking the balance due on a Citibank credit card. Specifically, Plaintiff states it is the assignee of the defaulted account, and now claims Defendant owes $11,249.56 in principal, costs, and pre-judgment interest, together with attorney's fees as specified in the credit card agreement. Plaintiff now moves for summary judgment. Plaintiff is represented by Alan Bjerke, Esq., who is also one of its principal shareholders. Defendant represents herself, without aid of counsel.

Plaintiff initially moved for summary judgment on June 1, 2009, which the Court denied on September 1, 2009, citing disputed facts regarding the account balance. A court trial was set for December 18, 2009. The trial was continued when Attorney Bjerke identified himself as the witness who would establish the debt and the balance due, claiming that no ethical conflict would arise from assuming dual roles as advocate and witness, since, as a principal shareholder of Plaintiff limited liability corporation, he was a party with an interest entitled to proceed *pro se.* Inasmuch as Attorney Bjerke's disclosure of his claim as a party with interest had not been included in the Complaint,

the Court allowed him to amend the Complaint to assert it. It then offered Defendant the opportunity for a continuance due to the late disclosure, which she accepted.

On January 11, 2010, Green Mountain filed this second Motion for Summary Judgment, arguing Defendant has not substantiated her affirmative defense of "accord and satisfaction"; and arguing further that, because Defendant did not respond to pertinent Requests to Admit, the record is sufficient for summary judgment.

Typically, the Court would give short shrift to a renewed motion for summary judgment, following an earlier denial based on the identification of disputed facts. Nonetheless, the Court retains discretion to consider subsequent Motions for Summary Judgment. See *Myers v. LeCasse*, 2003 VT 86A, ¶¶ 10-11, 176 Vt. 29. Upon renewed review, summary judgment is again DENIED, since Plaintiff has not supplied adequate proof of the amount due on Defendant's account to establish its claim as a matter of undisputed fact.

**Discussion**

*Plaintiff's Reliance on Defendant's Failure to Respond to Requests to Admit*

Plaintiff argues Defendant's credit card balance may be established based on Defendant's failure to respond to the following Request to Admit served April 29, 2009:

> 4. The principal amount due and payable by you on the above referenced agreement as of February 7, 2005 is $7,432.07.

While generally a request to admit is deemed admitted after 30 days of service if it has gone unanswered (V.R.C.P. 36(a)), the Court must balance that directive with its competing obligation to construe all pleadings to do substantial justice (V.R.C.P. 8(f)). The Court also retains broad discretion under Rule 36 to relieve a party of the consequences of a failure to respond to requests to admit.

2

Here, although Defendant, proceeding *pro se*, has not responded to Plaintiff's Requests after almost a year, her accompanying pleadings plainly demonstrate her disagreement with Plaintiff's position that the "principal amount due and payable . . . as of February 7, 2005 is $7,432.07." In both her initial Answer on April 20, 2009, as well as in her Responses to both Motions for Summary Judgment, Defendant has repeatedly insisted that she disputes Plaintiff's accounting of the amounts owed. This dispute has been framed as a challenge both to Plaintiff's proof of the debits charged against the credit card, as well as to its accounting for credits Defendant believes should have been made against the account when she was participating in a debt management program with a third-party company. Framed by Defendant's denials of the amount stated in the Complaint, which were acknowledged in the original rejection of Plaintiff's Motion for Summary Judgment, the Court is not persuaded that justice would be served by ascribing admissions to Defendant of the very amounts she has denied, both before and since service of Plaintiff's Requests to Admit. Accordingly, Defendant's failure to respond to Plaintiff's Request to Admit does not serve as unqualified proof of the principal balance of Plaintiff's credit card account, to establish that amount as a matter of summary judgment.

*Plaintiff's Reliance on It's Assignor's Business Records*

Absent the Requests to Admit, Plaintiff's remaining evidence also does not establish the principal amount due. This is because Plaintiff has not shown that Citibank's account statements are reliable, nor has Plaintiff submitted a sufficient account history to permit a proper calculation of the total amount due.

V.R.E. 803(6) provides:

3

*Records of regularly conducted business activity*. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that businesses activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12) or a statute or rule permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. . . .

The Vermont rule largely tracks its federal counterpart. Reporter's Notes to 2004 Amendment, V.R.E. 803(6). Other jurisdictions, whose business exceptions mirror the federal rule, have looked to federal case law and determined "exhibits can be admitted as business records of an entity, even when that entity was not the maker of those records, provided that the other requirements of [803(6)] are met and the circumstances indicate that the records are trustworthy." *Great Seneca Financial v. Felty*, 869 N.E.2d 30, 34 (Ohio Ct. App. 2006) (collecting cases).

In *Great Seneca*, the assignee of a credit card debt sought to establish the principal sum due by presenting the following evidence:

(1) a . . . credit-card application [of the original bank] signed by [debtor]; (2) . . . credit-card statements [of the original bank] beginning with a balance of $5,703.56 and detailing credits and debits on the account from January 1998 to May 2000, for a total of $7,406.79; and (3) documents purporting to show that several different entities had owned the . . . account at issue before [the assignee] acquired it. As to the first two sets of documents, [the assignee] submitted an affidavit from its custodian of records stating that [it] was an assignee of the original creditor, . . . that [the assignee] had received the attached records electronically, and that they were certified and "were made either by a party having personal knowledge of the information contained therein or based on information conveyed by a person having personal knowledge of the information contained therein."

*Id.* at 32. The *Great Seneca* court determined this information was sufficient to establish that the original bank's documents were trustworthy, and thus properly before the court

(*id.* at 34-35), however, ultimately, summary judgment was inappropriate because the assignee "failed to provide documentation of the credits and debits leading to the $5,703.56 balance that would have permitted a proper calculation of the total amount due" (*id.* at 35).

Here, to establish the amount due on Defendant's account at the time it was "charged off" by Citibank, Plaintiff supplied the Affidavit of its custodian of records, Valerie Hockert.[1]  In pertinent part, Ms. Hockert stated:

> . . .
> 3.  Green Mountain Bureau, LLC maintains certain business records, practices and procedures in the conduct of its business.  I am trained and familiar with those records, practices and procedures and have reviewed the files of the company as they relate to the account which is the subject of this lawsuit.
> 4.  Based upon the business records of the Plaintiff, Ms. Bisignano opened a MasterCard revolving line of credit account (Credit Card) with Citibank on December 1, 1998.  She used the account, making charges and payments until she made her last payment of $100.00 which was received by Citibank on January 4, 2006.  She failed to make any payments following that date and in accordance with banking regulations and Generally Accepted Accounting Practices (GAAP), the finance charges were removed from the balance due and the account was charged off of the books of Citibank in the amount of $7,432.07 on February 7, 2006.  See Plaintiff's Exhibit 1, Bates 002-003.
> 5.  After the account was charged off, it was transferred to the Plaintiff who purchased the account and has acquired the right to stand in the shoes of the original creditor and enforce their legal remedies with respect to the Defendant's account.  See Plaintiff's Exhibit 1, Bates 001-006.
> 6.  The acquisition of the Defendant's account with Citibank included the acquisition of copies of certain periodic statements that would have been sent to the Defendant on or about the closing date of each statement.  The Plaintiff has incorporated these records into their own and has attached them to Plaintiff's Exhibit 1 at Bates 007-009.
> 7.  The Plaintiff has searched its business records, including those acquired from the originating creditor and its assignees and can identify no record that the originating creditor entered into an accord and satisfaction with the originating creditor which was satisfied.

---

[1] Plaintiff also supplied: (1) Requests to Admit; (2) a copy of a Citibank credit card agreement; (3) the Affidavit of Alan Bjerke; (4)  bills of sale evidencing the assignment of Defendant's account from Citibank to Plaintiff; (5) account statements from Citibank evidencing balances in December 2005, January 2006, and February 2006; and (6) Plaintiff's "business records" noting such information as Defendant's account's original "open date," "charge off date," "last pay date," and remaining total principal due.

Plaintiff's evidence does not adequately establish the principal amount due because: (1) it does not establish that Citibank's account statements are sufficiently reliable to be admitted under V.R.E. 803(6), and (2) even if admissible, the records do not persuasively establish the total amount due as a matter of undisputed fact.

First, Plaintiff has not adequately established that the records obtained from Citibank were originally created or transmitted by "a person with knowledge" in the regular course of business, and thus reliable. See, e.g., *Great Seneca*, 869 N.E.2d at 32 (assignee swore it "had received [records from the original bank] electronically, and that they were certified and 'were made either by a party having personal knowledge of the information contained therein or based on information conveyed by a person having personal knowledge of the information contained therein'"). Here, Plaintiff has presented nothing similar to the certification in *Great Seneca*. While the Court recognizes that Citibank is a national banking giant that likely utilizes "standard" accounting practices, Plaintiff's sparse foundational support presumes too greatly on the scope of judicial notice that fairly might accompany such recognition.

Furthermore, the *Great Seneca* court was presented with account statements covering a two year period, and itemizing more than $1,700 of the total balance claimed of $7,403. Compared with the final three statements offered here, which only relate to the account in its dormancy, the *Great Seneca* court reviewed a much more robust evidentiary record in support of the claim of "regularly conducted business activity." By contrast, this Court knows too little about the circumstances giving rise to the claim for a balance owing of $7,432 to be confident as to the reliability of the accounting that supports that final figure.

As stated, the scant accounting for the period covered by the claim undermines any reliance the Court can place on such a small portion of the business record. Yet, important to the Court's resolution of the Motion for Summary Judgment as it might inform the parties at trial, even had the Court exercised its discretion to consider Plaintiff's affidavit and exhibits under V.R.E. 803(6), the evidence still would have proved insufficient to justify summary judgment. Again, *Great Seneca* informs this conclusion. As noted, while the court there concluded that the assignee's proffer of the assignor's records had sufficient foundation to meet the business records exception, that evidence alone failed to meet the plaintiff's burden to show the total owed. Notwithstanding a complete account of the last $1,700 of the total balance claimed, *Great Seneca* denied judgment to the plaintiff for failing to sufficiently account for the first $5,700 of the claimed total outstanding balance. Similarly, Plaintiff here has not produced sufficient documentation of the principal balance to permit a proper calculation of the total amount due. Indeed, Plaintiff *provides no details of any of the stream of charges and credits* on which it stakes its claim to a $7,400 judgment, except a statement indicating Defendant's last payment of $100, and two other statements adjusting the final balance to remove finance charges. This conclusory proffer cannot be considered sufficiently reliable to establish entitlement to judgment as a matter of undisputed fact.

In sum, the Court is wary of accepting a relatively small number of accounting statements to prove the amount due on a credit card account which was open for approximately eight years. This wariness is reflected in skepticism as to the reliability of such a partial proffer to conform to the business records exception to the hearsay rule, as well as its sufficiency to meet Plaintiff's burden of proof even if such records might be

arguably admissible.  This is especially so here, where Defendant has raised questions as to her account based on events in 2001 and 2002.[2]

        **WHEREFORE** it is hereby **ORDERED**:

        Plaintiff's Motion for Summary Judgment is **DENIED**.  The case will be rescheduled for trial, at which the evidence will be considered in light of the principles and authorities enunciated above.

        DATED                , at Newfane, Vermont.

                                          _____

                                          John P. Wesley
                                          Presiding Judge

---

[2] The Court acknowledges that the proof of any affirmative defense of accord and satisfaction rests with Defendant, and that the present record would not support such a complete defense.  Yet, Defendant's denial of the amount claimed, based on her good faith belief that payments made to a debt management company were credited to her account held by Plaintiff, leaves the complaint in need of evidence sufficient to satisfy the burden of proof.  For the reasons discussed herein, the summary judgment record is inadequate to the test.