[Cite as *BP Metals, L.L.C. v. Glass*, 2018-Ohio-3527.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

BP METALS, LLC,

    PLAINTIFF-APPELLANT,               CASE NO. 11-17-08

    v.

JAMES A. GLASS, ET AL.,              O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Paulding County Common Pleas Court
Trial Court No. CI 16 172

Judgment Reversed and Cause Remanded

Date of Decision:   September 4, 2018

APPEARANCES:

    *Steven L. Diller* for Appellant

    *Timothy C. Holtsberry* for Appellee, James A. Glass

**PRESTON, J.**

{¶1} Plaintiff-appellant, BP Metals, LLC ("BP Metals"), appeals the October 20, 2017 judgment entry of the Paulding County Court of Common Pleas dismissing its complaint in foreclosure against defendant-appellee, James A. Glass ("Glass"). For the reasons that follow, we reverse.

{¶2} On July 9, 2015, Glass, doing business as J. Glass & Co., an Ohio sole proprietorship, executed a promissory note (the "note") in the amount of $129,500.00 payable to BP Metals as lender "for the sole purpose of developing a precious metals refining technique * * *." (Doc. No. 1, Ex. A). On July 6, 2016, Glass, individually and as sole proprietor of J. Glass & Co., executed a "loan modification and change in terms agreement" (the "modification") in which "BP Metals extended the additional sum of [$10,000.00] to Roseann Glass, the mother of" Glass in exchange for his promise to repay that loan under the terms of the note and modification. (Doc. No. 1, Ex. B). That same day, Glass executed a mortgage against his residence located at 530 Plainfield Drive, Payne, Ohio 45880 to secure the debt in favor of BP Metals. (Doc. No. 1, Ex. C). The mortgage was filed on August 11, 2016, recorded in Volume 573 of the Official Records at Page 2088, in the Paulding County, Ohio Recorder's Office. (*Id.*).

{¶3} Glass defaulted, and BP Metals instituted a foreclosure complaint against him, The Antwerp Exchange Bank, and the Paulding County Treasurer on

November 21, 2016. (Doc. No. 1). In its complaint, BP Metals averred that it is the holder of the note, the modification, and the mortgage and attached copies of each to its complaint. (*Id.*). Glass, pro se, filed his answer on December 6, 2016. (Doc. No. 5). The Antwerp Exchange Bank filed its answer on December 6, 2016. (Doc. No. 8).

{¶4} Throughout the pendency of the case, Glass filed a number of "documents" and the parties exchanged various motions which do not pertain to the outcome of this appeal. On February 3, 2017, BP Metals filed a motion to deem admitted its requests for admission of Glass. (Doc. No. 18). On February 8, 2017, Glass filed a "Motion to Withdraw Admission" requesting that the trial court "withdraw [BP Metals's] Motion to deem [its] requests for admission" admitted. (Doc. No. 19). On March 27, 2017, the trial court granted BP Metals's motion to deem admitted its requests for admission of Glass and denied Glass's February 8, 2017 motion. (Doc. No. 38).

{¶5} On May 4, 2017, Glass, represented by counsel, filed a motion for leave to file an answer to BP Metals's complaint, which the trial court granted on May 8, 2017. (Doc. Nos. 60, 61). BP Metals filed a memorandum in opposition to Glass's motion for leave to file an answer and motion to vacate the trial court's order granting Glass's motion for leave to file an answer. (Doc. No. 62).

**{¶6}** On July 11, 2017, Glass filed a motion for leave to file instanter an amended answer and counterclaims, which he filed instanter. (Doc. No. 70). BP Metals filed a memorandum in opposition to Glass's motion for leave to file instanter an amended answer and counterclaims. (Doc. No. 74).

**{¶7}** On April 4, 2017, BP Metals filed a motion requesting that the trial court find Glass in contempt of court for failing "to obey the subpoena issued on March 8, 2017 compelling him to appear for deposition on March 27, 2017." (Doc. No. 41). On April 6, 2017, the trial court ordered Glass to show cause and scheduled a contempt hearing. (Doc. No. 44). On July 9, 2017, after a hearing, Glass admitted to being in contempt of the trial court's subpoena order. (Doc. No. 73). On July 20, 2017, BP Metals filed a motion requesting the assessment of fees and costs based on the trial court's order finding Glass in contempt of its subpoena order. (Doc. No. 75). Glass filed a memorandum in opposition to BP Metals's motion for fees and costs. (Doc. No. 76).

**{¶8}** BP Metals filed a motion for summary judgment on April 28, 2017. (Doc. No. 50).

**{¶9}** On September 11, 2017, Glass filed a motion to dismiss BP Metals's complaint arguing that BP Metals lacked standing to sue Glass in foreclosure. (Doc. No. 78). Glass did not articulate the ground under which he was requesting dismissal of BP Metals's complaint. (*Id.*). However, Glass attached numerous

exhibits to his motion. (*Id.*). BP Metals filed a memorandum in opposition to Glass's motion on September 18, 2017. (Doc. No. 79). BP Metals attached numerous exhibits to its memorandum. (*Id.*). On October 12, 2017, Glass filed a motion for leave to file instanter his response to BP Metals's memorandum in opposition to his motion, which he filed instanter. (Doc. No. 80). BP Metals filed a memorandum in opposition to Glass's motion for leave to file his response instanter to its memorandum in opposition to Glass's motion. (Doc. No. 81). On October 20, 2017, the trial court denied Glass's motion for leave to file his response instanter to BP Metals's memorandum in opposition to Glass's motion to dismiss. (Doc. No. 82). That same day, apparently treating Glass's motion as a motion for summary judgment, the trial court concluded that BP Metals lacked standing to sue Glass in foreclosure and dismissed the action. (Doc. No. 83). In that same decision, the trial court held moot all other pending motions and ordered Glass to pay BP Metals $5,332.44 in fees in relation to its conclusion that Glass was in contempt of its subpoena order. (*Id.*).

{¶10} On November 20, 2017, BP Metals filed its notice of appeal. (Doc. No. 84). It raises two assignments of error for our review.

**Assignment of Error No. I**

**The trial court erred when it granted Appellee's Motion to Dismiss and ruled that Appellant lacked the standing required to invoke the jurisdiction of the common pleas court.**

{¶11} In its first assignment of error, BP Metals argues that the trial court erred by dismissing its complaint in foreclosure after concluding that BP Metals lacked standing to invoke the jurisdiction of the trial court. BP Metals contends that it had standing to invoke the jurisdiction of the trial court because it is a "person" entitled to enforce the negotiable instrument.

{¶12} As an initial matter, it is not clear what form of dismissal Glass relied on in arguing that dismissal was warranted in this case or what form of dismissal the trial court ultimately determined was appropriate. However, because the parties attached exhibits to their motion and memorandum in opposition, respectively, and because the trial court considered evidence beyond the allegations contained in the complaint, we are assuming that the trial court proceeded under summary judgment. *See Eichenberger v. Woodlands Assisted Living Residence, L.L.C.*, 10th Dist. Franklin No. 12AP-987, 2013-Ohio-4057, ¶ 9, 20.

{¶13} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

**{¶14}** "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292. "The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.*, citing *Dresher* at 292 and Civ.R. 56(E).

**{¶15}** "Civ.R. 17(A) requires that 'a civil action must be prosecuted by the real party in interest,' that is, by a party who can discharge the claim upon which the action is instituted or is the party who has a real interest in the subject matter of that action." *U.S. Bank, N.A. v. Coffey*, 6th Dist. Erie No. E-11-026, 2012-Ohio-721, ¶ 13, quoting *Discover Bank v. Brockmeier*, 12th Dist. Warren No. CA2006-057-078, 2007-Ohio-1552, ¶ 7. "If an individual or one in a representative capacity does not have a real interest in the subject matter of the action, that party lacks the standing to invoke the jurisdiction of the court." *Id.*, citing *State ex rel. Dallman v. Court of Common Pleas, Franklin Cty.*, 35 Ohio St.2d 176 (1973), syllabus. "In a foreclosure action, a party may establish its interest in the suit, and thus have standing to bring a foreclosure suit, when at the time it files its complaint in

foreclosure, it either (1) has had the mortgage assigned to it, or (2) is the holder of the note." *JP Morgan Chase Bank v. Stevens*, 8th Dist. Cuyahoga No. 104835, 2017-Ohio-7165, ¶ 36, citing *Bank of Am., N.A. v. Calloway*, 8th Dist. Cuyahoga No. 103622, 2016-Ohio-7959, ¶ 13, citing *CitiMortgage, Inc. v. Patterson*, 8th Dist. Cuyahoga No. 98360, 2012-Ohio-5894, ¶ 21, citing *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017. *See also BAC Home Loans Servicing, L.P. v. Haas*, 3d Dist. Marion No. 9-13-40, 2014-Ohio-438, ¶ 26 (noting that "[i]n order to have standing, BAC was required to be either the holder of the note or to have been assigned the mortgage prior to the complaint being filed").

{¶16} "A note secured by a mortgage is a negotiable instrument that is governed by R.C. Chapter 1303." *Id.* at ¶ 37, citing *Wells Fargo Bank, N.A. v. Carver*, 8th Dist. Cuyahoga No. 102822, 2016-Ohio-589, ¶ 14. "Under R.C. 1303.31(A), three 'persons' are entitled to enforce an instrument: (1) the holder of the instrument; (2) a nonholder in possession of the instrument who has the rights of a holder; and (3) a person not in possession of the instrument who is entitled to enforce the instrument under R.C. 1303.38 or 1303.58(D)." *Id.* "R.C. 1301.201(B)(21)(a) defines a holder of a negotiable instrument as '[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession.'" *Id.*, quoting R.C. 1301.201(B)(21)(a).

{¶17} Glass asserted that he is entitled to judgment as a matter of law with evidence that he alleges demonstrates that BP Metals does not have possession of the note depicting his "original" signature. As support for his contention, Glass relied on an email from the attorney representing BP Metals to his attorney stating that BP Metals "does not have a note with Mr. Glass's original signature" because "Mr. Glass sent [BP Metals] a copy via e-mail only and is believed to have not forwarded the original. He signed his version and his that in [sic] his possession." (Doc. No. 78, Ex. B). Contrary to Glass's assertion that this evidence entitles him to judgment as a matter of law, this evidence creates a genuine issue of material fact as to whether BP Metals is a holder of the instrument and entitled to enforce it. That is, whether the instrument held by BP Metals does or does not bear Glass's original signature does not divest BP Metals of its status as a person entitled to enforce the instrument.

{¶18} The trial court's conclusion that BP Metals is not a holder of the instrument because Glass converted the instrument into electronic form and retained the hardcopy wholly ignores that electronic records are enforceable under Ohio law. Indeed, the Ohio Uniform Electronic Transaction Act codified under R.C. Chapter 1306 recognizes the enforceability of electronic records. R.C. 1306.06 provides:

(A)  A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.

(B)    A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.

(C)    If a law requires a record to be in writing, an electronic record satisfies the law.

(D)    If a law requires a signature, an electronic signature satisfies the law.

R.C. 1306.01(E) defines "electronic" as "relating to technology having electrical, digital, magnetic, wireless, optical, electromagnetic, or similar capabilities." R.C. 1306.01(M) defines "record" as "information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form." In addition, R.C. 1306.01(G) defines "electronic record" as "a record created, generated, sent, communicated, received, or stored by electronic means." Finally, "electronic signature" is defined as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." R.C. 1306.01(H).

{¶19} A document converted to digital form and remitted by email is an electronic record. As such, the email referenced above creates a genuine issue of material fact as to whether the parties agreed to conduct the transaction by electronic means and create a binding contract under Ohio law. *See* R.C. 1306.08(B) ("The effect of an electronic record or electronic signature attributed to a person * * * shall

be determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law."); R.C. 1306.12 ("In a proceeding, evidence of a record or signature may not be excluded solely because it is in electronic form."); R.C. 1306.07(A) ("If the parties have agreed to conduct a transaction by electronic means and a law requires a person to provide, send, or deliver information in writing to another person, the requirement is satisfied if the information is provided, sent, or delivered, as the case may be, in an electronic record capable of retention by the recipient at the time of receipt.").  Because there is a genuine issue of material fact as to whether the parties agreed to conduct the transaction by electronic means and create a binding contract within the meaning of R.C. Chapter 1306, there is a genuine issue of material fact as to whether BP Metals is a holder of the note and, consequently, has standing to invoke the jurisdiction of the trial court.

{¶20} Moreover, the trial court's conclusion that summary judgment in favor of Glass is proper because BP Metals lacked standing to invoke the jurisdiction of the trial court is further erroneous because it ignores that Glass also executed a mortgage in favor of BP Metals.  Indeed, the record reflects that BP Metals attached a copy of the mortgage to its complaint revealing that Glass executed the mortgage to secure the debt in favor of BP Metals.  (Doc. No. 1, Ex. C).  *See Haas*, 2014-Ohio-438, at ¶ 28.

{¶21} For these reasons, we conclude that summary judgment in favor of Glass is improper. BP Metals's first assignment of error is sustained.

### Assignment of Error No. II

**The trial court erred when it did not allow time for additional discovery before granting Appellee's Motion to Dismiss.**

{¶22} Because we determined under BP Metals's first assignment of error that the trial court improperly granted summary judgment in favor of Glass, BP Metals's second assignment of error is rendered moot, and we decline to address it. *See* App.R. 12(A)(1)(c); *Chase Home Fin., L.L.C. v. Dunlap*, 4th Dist. Ross No. 11CA3266, 2013-Ohio-1915, ¶ 2.

{¶23} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**ZIMMERMAN and SHAW, J.J., concur.**

**/jlr**